When you're ready, morning, morning, this is the case, as you know, it's about the jurisdictional matter. Do we have jurisdiction to be here? My client's position, and we're very pleased to have a chance to talk about this, is that Section 38 U.S. CFR 3.304F, because they've changed the subparagraphs, but I believe it's five now, it used to be three, et cetera, is a liberalizing but it has to be followed by the Veterans Administration, and they did not in this particular case. That is really the gist, to talk about various facts that are involved, that relate. This is, of course, related to non-combat personal assaults that create a disability for someone when they're in the service, service-connected. Recently, of course, we know that there's been liberalization also with respect to combat, and that's been recently discussed also in this court, recent decision, versus the Secretary, but this case is different because there's such an issue of personal assaults, the statute has to be followed, it's a liberalization statute. Now, where did it get, why wasn't it followed? It wasn't followed first because the government is required to give, to accept lay statements and witness, as a matter of fact, the veterans are required to provide those, they have to, their own word, and even records from a medical doctor, like in this case, there are three VA physicians or health professionals who said this man has PTSD and related his experiences in England in 1954 or 5. But the Veterans Administration sent him for a compensation pension examination. That was not followed properly. If you look at that exam, you have to look at the lay statement. The psychologist who did that is not a clinician, he did not fill out that form properly, and you'll note at the bottom of that form, it says if there's lay statements, they should have a clinician. There is no report by that gentleman to report it to the board that says anything about the lay statement, he just reports that it was there, he doesn't. But what he really does report is he says in his opinion, he says that a non-consensual, homosexual, male-on-male, it is not within the spirit of the DSM, which relates, which defines what PTSD is. He says that, so after he says that, his entire opinion is, it lacks any substance. This is not a question of fact. He has to follow the law, the Veterans Administration has to follow. If we then look at the board decision that came down, they of course discounted the entire credibility of the lay statement. In effect, the lay statement from the wife, 50 years ago she's writing about it, she's in Britain, and there's a difference between British English and American English. But that's still a credibility determination, even if we disagreed with it, we couldn't do anything about it. That was clearly erroneous, the judge, fine judge, etc. But the judge at the court, he said that he looked at it under the clearly erroneous. But you know what the reason for the board was, is they said, they discounted her statement because she said a bathroom, excuse me, shower, and my client said a urinal and a bathroom, that's where the assault occurred. That was the difference they say, that is the only difference that the board relied on. That's what they threw out her statement, with her statement not in there, the entire, then they threw out the physicians, the three, at least two in the record, two are VA specialists on PTSD who's a psychiatrist and a psychologist. And they threw that out, that is the board, because they said their opinions were diminished. Why were they diminished? Because they relied on the statement and the fact that the assault happened in England by the ex-wife. They were divorced shortly after. No one discussed that. This rule, the statute requires that they look at changes in behavior. The statement from the wife, which was thrown out only because she said shower in her written statement 50 years later and he said bathroom, you know, and we thought, so they threw that out. Statute has to be followed, they have to be reasonable in applying the statute and interpreting it and how it should be interpreted and enforced and implemented, if you will. It was misapplied. Excuse me. And again, that neuropsychologist, in his opinion, that is no, that is not, cannot make someone have symptoms of PTSD or suffer that. No, that's what he says right there. That's his opinion. So your argument is that we, even though we normally don't have jurisdiction over credibility determination, if the credibility determination was really, really wrong, we would have jurisdiction over it? No, I don't know that that would pass. I believe what we're talking about here is that they have to, this is a liberalizing statute or rule, I should say, excuse me, a rule that says they have to get, they have to get information from other sources. And then in doing that, they have to be fair about it. And they have to, they have to follow the rules. Well, the fact that they're allowed to consider and they will consider lay evidence doesn't mean that they have to find that lay evidence to be credible. No, but in evaluating it, they have to follow the rules, which say that, for example, that there's a rule there, the clinician's guide requires, excuse me, let me back up, the psychologist did not make any evaluation with respect to the lay statements. And yet the form he used, the very form he used indicates on it, if there's a lay statement, you need a clinician. He didn't make any evaluation of the lay statement. All he said was he felt my client's PTSD, which was acknowledged pretty much, was from a later incident. So they didn't follow the rule. They don't follow it. Especially when you look at the, I mean, it says right in here, if I might read it, I'm looking at page 94 of the adjoined appendix, but it has the rule there. And it says that the VA may submit any evidence that it receives to an appropriate medical or mental health professional for an opinion as to whether it indicates that a personal assault occurred. Well, he noted it, but he didn't make any analysis. He didn't say anything about it. All he said about it was about the assault itself is that he felt that that was not, that a one-time assault like that, a homosexual encounter, it's in the file, of course, was not within the spirit of the DSM and thereby is not PTSD eligible. But there's more, of course. He didn't talk, he mentioned it was a divorce, and I brought that to the attention of the judge and he mentioned it was a divorce, but he didn't give any analysis of it. Neither did the board, by the way. The board didn't say, well, you know, they didn't really analyze that, and that was clearly erroneous. And the judge at the federal, excuse me, at the Court of Veterans Appeals, he didn't analyze anything. He just said, when we asked him to please look at the fact that the board made this distinction between shower and bathroom as a location of the occurrence, he said, well, it looked to him like it didn't seem that it was clearly erroneous in his opinion. That's the problem. I mean, you may be right that what the board did was clearly erroneous, but we don't have jurisdiction to determine whether they're clearly erroneous fact findings. It's different from other appellate review situations. So how do you get around this problem? Well, I believe, again, the argument that we have is that this is a liberalizing statute, and I don't think that's disputed. And the implementation of this and the interpretation of it required that the veterans court judge would look at that and say, this has not been followed. Essentially, it's due process. It is due process. That is essentially the jurisdiction of the court. Because if one looks in total at the situation what happened here, where we have two experts in PTSD from the Veterans Administration themselves who said, this man has it. It has nothing to do with that subsequent alleged incident, and it has nothing to do with that. But it is from what happened in England. And they throw the whole thing out, if you will, because of shower and bathroom. It boggles the mind. That is not appropriate. It's not fair. It's not right. And if I might, I'll check my notes. You might also add, excuse me, that there is no reasons and basis mentioned. But you may say, well, reasons and basis sounds like facts, but not necessarily. There's legal theories involved in that. There's no reference. No one in this case gives any real substantive legal reasons or basis. And there's also the question they did not implement the Equipol statute, which I mentioned in here. The benefit of the doubt statute is mentioned in the brief. And that they did not balance. Basically, once they threw out that wife's statement that she said he told me he was sexually assaulted, he told me the name of the man, he was different. We became divorced shortly after as a result, soon after. Once they threw that, everything else falls apart in the theory. But they don't even give a reason and analysis, excuse me, reasons and basis. They don't explain why, how they make the decisions. The judge just says that he didn't, he just didn't really like the case, I think, to be perfectly frank. I think the judge should have looked at it under the clearly erroneous statute. Now, I mean, look at the actions of the board. Now, his own actions. You're into your rebuttal time. You want to say something? Oh, I'm sorry. I didn't see. Yes, Your Honor. Okay. Thank you, Your Honor. We'll hear from the government and then we'll reserve the rest of your rebuttal time for the response you might like to make. Good morning, Your Honors. May it please the Court. Mr. Brella has raised several issues in his argument here and I'll just go down and address them one by one. His primary argument is that the PTSD Regulation 38 CFR Section 3.304 F5 is a liberalizing statute. And he reasons that statute requirement that the Secretary essentially gives special credence or accord special treatment to the lay statements offered by a veteran in support of an in-service personal assault that causes PTSD. The regulation doesn't have any such requirement. It's fair to characterize it as a liberalizing regulation. It permits veterans who develop PTSD as a result of an in-service personal assault to submit types of evidence that they otherwise might not be able to submit such as changes. But what it doesn't do is change the Board's role as the finder of fact to weigh the evidence that it receives. And that's what the Board did here. It accepted evidence, including the statement from Mr. Brella's ex-wife and it considered all the evidence and it made a determination that the statement of Mr. Brella's ex-wife wasn't credible because it conflicted with the testimony that Mr. Brella provided. He does have a pretty good point. Despite all the other detail that she has in that letter, they rejected it solely because she used the word shower when he used the word bathroom. That seems like a pretty baffling way for the Board to just decide not to consider it. That may be true, Your Honor, but that's just not something that this Court can review. In fact, that distinction that the Board relied on, that distinction between this assault happening in a bathroom at a urinal versus in a bathroom in a shower, was not really highlighted until Mr. Brella's motion for reconsideration before the Board. So that evidence wasn't even that distinction between shower and bathroom and the disparity or the difference between the British and the American understanding of those terms wasn't something that was before the Board when it made its decision. It wasn't something that was before the RRO when it made its decision. I'll note that the Board in its motion for reconsideration denied the motion for reconsideration but sent the ex-wife's clarifying statement to the regional office, and that's something that could form the basis maybe of new and material evidence down the road. But again, that's just not something that at this level the Court can review. Mr. Brella also takes issue with the PTSD exam performed by Dr. Suanda. You're saying the veteran might ultimately prevail in this case. If at the regional office he can establish that his ex-wife's clarifying statement about the way that she used the term shower, it's possible that that could be new and material evidence before the Board, yes. The challenge to Dr. Suanda's report is similarly fact-based. Mr. Brella disagrees with Dr. Suanda's assessment of the record and the evidence before him. In particular, he disagrees with Dr. Suanda's questioning of the PTSD diagnosis. Dr. Suanda opined that the type of assault that Mr. Brella described didn't meet the spirit of the DSM for requirements for PTSD. And that's a pretty strange statement, isn't it, that a sexual assault doesn't satisfy the spirit of the requirements for PTSD? He pretty much stands alone in that kind of medical opinion, doesn't he? There were two other medical opinions in this case that reached a different conclusion. And Dr. Suanda didn't so much say that it couldn't, he just said he thought it was a weak connection. And that may seem strange, but that was his medical opinion and I don't have any reason to question that. I'm not sure that the Board, again, looked at that determination and it found that he had weighed all the evidence and considered the fact. And again, identified a post-service event, an incident where Mr. Brella was the victim of an armed robbery in which he was beaten to a pulp, as it's described in the record, as the more probable connection to any PTSD symptoms that Mr. Brella might have. So not only did Dr. Suanda question the in-service stressor, he identified a stressor that was more likely the cause of any PTSD that Mr. Brella might have. But there's no requirement that there be a single stressor if someone's suffering from PTSD, is there? No, that's correct. There isn't. I mean, the second event could have aggravated the underlying PTSD caused by the first event, but Dr. Suanda didn't see that way. Now, Mr. Brella also contended that the Board threw out the statements of his medical experts. Now, I'm not sure that's an accurate characterization of what the Board did. The Board, again, considered all the evidence, it weighed the statements provided by Mr. Brella's medical experts, and it weighed Dr. Suanda's report, and it found Dr. Suanda's report more persuasive because it engaged in analysis of the evidentiary materials, whereas the statements provided by Dr. Suanda's experts were based on his own statements. Mr. Brella also, for the first time today, has raised a due process claim. That claim was not raised in this briefing, and that can't now be a basis for this Court to take jurisdiction over the matter. Could you help to clarify something for me? Is there a second statement in this record from the XY? There is, in fact, a statement that was submitted in connection with the motion for reconsideration, where she clarifies her statement about... What page of the record is that? Is this the one at 111, JA111? Yes, that's correct, Your Honor. It's at JA111. And that is in the record. It was attached to a motion, but it was not in the record before the Regional Office of the Board when they made their decisions in the matter. And was that the ground for the refusal to consider it? Excuse me, Your Honor? Was that the reason that the Board refused to consider it? No, the reason the Board refused to reconsider it, it was not... The reconsideration challenge was premised on a clearly erroneous challenge, and the Board found that on review of its decision that it wasn't... Excuse me, a clear error challenge. There was no clear error in its decision. No, but you said earlier that this second statement at 111 could be the basis for a new and material evidence reopen, right? Yes. And I'm just trying to understand what the Board's ground for refusing to consider it at this point was, that it wasn't... That it had been submitted too late? The Board's reason for denying the motion of reconsideration was that it didn't meet the additional evidence... It didn't specifically address that question of submitting a new evidence to support an argument of clear error. It just said that Mr. Brella hadn't established clear error. But I believe it's the last sentence on J112 where it says it's sending the new material to the Albuquerque, New Mexico Regional Office for inclusion in the file. Was the last sentence of what, on the page? I believe so, yes. I think it's on 113. Oh, my apologies, yeah. Oh, I'm sorry, I gave you the wrong... Yeah, that's not the one. It's 119, 119, my apologies. 119? Yes, it's the final sentence on page 119 of the Joint Appendix. So, what they're saying is that this may be new and material evidence that could reopen the whole thing? Yes. Mr. Brella's reasons and basis argument is another avenue that he uses to essentially challenge the factual determination made by the Board. As this Court recognized in the Cook v. Principi case, review of the Board's reasons and basis necessarily requires the Board to apply law to fact, and that's something that's outside this Court's jurisdiction. And the last point that Mr. Brella raised about the equipoise standard, again, this is something that he does raise in his blue brief, although he doesn't develop the point, and it's arguably waived. But in any event, even if the Court were to reach the merits at that point, on the merits, it should affirm the Board's determination, because the Board, excuse me, the Veterans Court's determination, because the Board, the equipoise standard applies when there's a rough balance of the evidence. And here, the Board found that a preponderance of the evidence weighed against the finding of an in-service PTSD. Doesn't that essentially give the Board the power to write the equipoise out of the entire process? All they have to say is, well, it's not an equipoise, therefore we don't have to apply the equipoise statute or the equipoise regulation. It could do that. But again, here, that determination is backed up by several pages of analysis of the evidence and explaining why some evidence was more persuasive than the other. So I'm not sure here what the Board could have done in addition to that, to reach a conclusion that a preponderance of the evidence weighed against the finding of the in-service stressor. Okay. All right. Thank you. Thank you very much. Mr. Breyer. Thank you, Your Honors. The equipoise matter is contained in the Board's report. But once they've determined that the probative value of the veteran's treating provider's opinions are diminished because of the shower bathroom, then they don't have, actually, they don't have any evidence. You have to have a lay statement of support. Without that, they just, for that reason, they throw it out. It doesn't seem fair. It isn't fair. The equipoise issue, I mean, maybe I should refer to the doctor's statements a little before. I believe it's at 74 and 76. There's two. Dr. Vosburgh is the head of the, he's a psychiatrist. He's the head of the PTSD program there. And there's a lot of PTSD work there. And he states, I reviewed the pre-rating examination performed by Dr. Swan. I find it was apparently, he misunderstood the historical facts. Mr. Barilla's symptoms are clearly and directly tied to the sexual assault. He has no intrusive memories of other PTSD symptoms in relation to the event at all. This was his psychiatrist who treated him for years. It took him a while for the client, at least, to get to where he would talk about because of the shame and whatnot of the assault. Additionally, Dr. Nye, the PhD, she's the head of the PTSD trauma clinic there. She's a doctorate. And she says he's always been the veracity. And his psychiatric difficulties are consistent with the diagnosis. And Dr. Vosburgh connected to the military in his life. I don't know about the new material argument. I mean, I hear what the counselor here says. I don't know that it's binding on the Veterans Administration at all. It'd be nice if it was. And still, we might just go, you know, if they don't like the case, you know, if there's something about the case that's unusual, these non-combat personal assaults are very difficult, I think. And that's why the legalization statute came through. That's why it needs to be enforced. That's why it needs to be encouraged that the Veterans Administration would pay attention to it and follow the rule. And thank you for listening. Thank you, Mr. Greer.